HERBERT R. SANFORD & others vs. BOSTON EDISON
COMPANY.

Suffolk.     January 4, 1944. — June 28, 1944.

Present: FIELD, C.J., QUA, DOLAN, & RONAN, JJ.

*Equity Jurisdiction*, Specific performance, Class suit. *Contract*, Construction, With labor union, Performance and breach, Validity. *Equity Pleading and Practice*, Bill, Injunction, Labor dispute. *Arbitration. Labor and Labor Union. Words*, "Injunction."

A bill in equity, brought by officers of a labor union in behalf of themselves and all other members, who were "too numerous to be joined as plaintiffs," against an employer who had made a contract with the union, averring the making of the contract and that in a named section thereof the defendant had agreed that he would "not by general rule or otherwise refuse to recognize assignments of wages when made in accordance with the provisions of" St. 1933, c. 96; that the union had fully performed the contract; but that the defendant, after performing for some time, had refused further to recognize assignments by many members of the union of parts of their wages to it in payment of their dues; and that the union would suffer irreparable damage for which it had no plain, complete and adequate remedy at law, stated a cause for specific performance of the "check-off" provision of the contract which was joint property of all members of the union and which they could enforce jointly by such suit, instead of being required to resort to continuous litigation by actions at law or to suffer long delay in receiving the dues.

There is a growing tendency to give a promisee under a contract the actual performance for which he bargained, if he prefers it, instead of a substitute in damages, where damages are not the equivalent of the performance. Per QUA, J.

An employer's refusal to recognize one hundred twenty assignments of wages made by his employees to a labor union in payment of their dues, although it did not appear that his refusal was effected by a "general rule," would be a breach of a provision in a contract between him and the union that he would "not by general rule or otherwise refuse to recognize assignments of wages."

A bill in equity by a labor union for specific performance of an article of a contract with an employer respecting "check-off" was not demurrable because an entirely different article of the contract provided that "all agreements" in the contract "are subject to all applicable laws . . . and to the lawful regulations, rulings and orders of regulatory commissions . . . and that" the contract should be "modified to conform" thereto, and there was no averment that there were no

such regulations, rulings, or orders which made it unlawful for the defendant to perform the article respecting "check-off."

A provision of a contract between a labor union and an employer, not contemplating a statutory arbitration but contemplating the entire and final settlement by arbitration out of court of all controversies to which it applied, was not valid, and resort to such arbitration was not a prerequisite to maintenance of a suit for specific performance of a "check-off" provision of the contract.

A provision of a contract between a labor union and an employer that the employer would "not by general rule or otherwise refuse to recognize assignments of wages," although in negative language, was in substance an affirmative promise to recognize them, and a decree requiring specific performance thereof would not be an "injunction" within G. L. (Ter. Ed.) c. 214, § 9A, inserted by St. 1935, c. 407, § 4.

BILL IN EQUITY, filed in the Superior Court on September 2, 1943.

A demurrer was sustained by *Greenhalge*, J.

*R. C. Evarts*, (*J. D. Hanify* with him,) for the plaintiffs.

*W. R. Cook*, for the defendant.

QUA, J. This bill is brought by officers of United Brotherhood of Edison Workers, hereinafter called the union, in behalf of themselves and all other members, who "are too numerous to be joined as plaintiffs herein." Its allegations are in substance these: On May 24, 1940, the union and the defendant entered into a written contract attached to the bill. Article 5, § 7, of the contract is as follows: "The Company will not by general rule or otherwise refuse to recognize assignments of wages when made in accordance with the provisions of Chapter 96 of the (Massachusetts) Acts of 1933." A large number of members of the union have executed written assignments of a portion of their future wages to be deducted each month for the payment of their dues to the union, and the company has heretofore in accordance with its agreement deducted the amounts so assigned from the wages of said members and has forwarded said deductions to the union; but on or about August 31, 1943, the defendant notified the union that it would thereafter refuse to recognize such assignments of wages for the payment of dues by approximately one hundred twenty members of the union, whose assignments contained written requests for the deduction of their union

dues from the wages of the respective assignors; and that it would not deduct the amounts so assigned from said members' checks and would not forward the aggregate of such amounts to the union. The defendant refused to forward such amounts which became due on September 1, 1943. The union has fully performed the contract on its part and will suffer irreparable damage for which it has no plain, complete, and adequate remedy at law.

The prayers of the bill are that the defendant be enjoined from refusing to recognize the assignments, for specific performance of the contract, and particularly of art. 5, § 7, and for an execution for the amount due the union.

The contract referred to in the bill and annexed to it recites that the union has been organized by employees of the defendant; that all the employees are eligible to membership (with some exceptions as to employees exercising powers of discipline); and that a majority of such employees are members and have designated the union as their exclusive collective bargaining representative. It contains, in addition to the "check off" provision set forth in the bill, elaborate provisions relating to wages, hours, tenure of employment, and settlement of disputes. It seems intended to regulate generally the relations of the defendant to its employees in such matters as are commonly the subject of collective bargaining.

Statute 1933, c. 96, to which reference is made in the contract, added a new § 8 at the end of G. L. (Ter. Ed.) c. 154. The new section provides that none of the earlier sections of the chapter (which regulates and limits assignments of future wages) should be applicable to or control or prohibit the deduction of labor or trade union or craft dues or obligations from wages of an employee in accordance with a written request made by the individual employee.

The defendant demurred to the bill on the grounds that the plaintiffs have not stated a cause of action and that they have a plain, adequate, and complete remedy at law.

1. In our opinion the bill states a cause of action for specific performance of the defendant's promise to recognize

the assignments. A decree to that effect could easily be enforced and is open to none of the objections that sometimes prevent relief of that character. Only by ordering specific performance can the court secure to the plaintiffs the real benefit of their contract. That contract is the joint property of all the members of the union. They can enforce it jointly by means of this suit brought in behalf of all. A series of law suits brought at intervals as long as the contract remains in force to recover the sums assigned, which by the terms of the assignments are payable to the union monthly, would not give the union the benefit of the "check off." The parties intended that the union should secure regular payment of the dues of its members while they were earning wages. Labor considers this important, especially under present conditions. It was in part to get this that the plaintiffs gave their own promises which formed the consideration on their part for the contract. The defendant agreed to it. The defendant should not be allowed to substitute for the "check off" which it promised a choice of either continuous litigation or long delay in the receipt of the sums due. See *R. H. White Co.* v. *Murphy*, 310 Mass. 510, 518.

There is a growing tendency to give the promisee the actual performance for which he bargained, if he prefers it, instead of a substitute in damages, where the damages are not the equivalent of the performance. Williston states the general rule defining instances where specific performance will be granted in these words, "where damages are an inadequate remedy and the nature of the contract is such that specific enforcement of it will not involve too great practical difficulties, equity will grant a decree of specific performance." Williston on Contracts (Rev. ed.) § 1418, at page 3952. This rule is applied in proper cases involving collective bargaining contracts. Williston on Contracts (Rev. ed.) § 1423A, and cases cited. See "The Present Status of Collective Labor Agreements," 51 Harvard Law Review, 520. In Am. Law Inst. Restatement: Contracts, § 361 (e), comment i, it is said: "Damages are not adequate if full compensation for resulting harm will involve the plain-

tiff in multiple litigation, either with several different parties or in the form of repeated actions against the defendant." See also § 372. A number of cases in this Commonwealth illustrating in greater or less degree the broadening tendency in applying the remedy of specific performance will be found in the footnote.[1]

2. The defendant's contention that no breach of the contract is alleged because it does not appear that the defendant has adopted or put into effect any "general rule" refusing to recognize assignments of wages is without foundation. The defendant's promise in art. 5, § 7, that it would not "by general rule or otherwise" refuse to recognize the assignments means that it would not refuse either by general rule or without a general rule. The maxim noscitur a sociis has no application. *Sheehy* v. *Barry,* 87 Conn. 656, 661–662. *Black* v. *Delaware & Raritan Canal Co.* 7 C. E. Green, 130, 400. *Collector* v. *Hubbard,* 12 Wall. 1, 16, 18. *Whitlock* v. *Boston & Maine Railroad,* 29 Fed. (2d) 351. Compare *Commonwealth* v. *Rice,* 9 Met. 253, 258. The allegations of refusal to recognize one hundred twenty assignments are sufficient allegations of breach. The case is distinguishable from *Becker Transportation Co. Inc.* v. *Department of Public Utilities,* 314 Mass. 522, 526–527, and other cases cited by the defendant.

3. The provision of art. 1, § 7, of the contract that "all agreements herein are subject to all applicable laws . . . and to the lawful regulations, rulings and orders of regulatory commissions having jurisdiction; and that this agreement shall be modified to conform to such laws, regulations, rulings and orders" does not make it necessary that the plaintiffs in bringing suit to enforce art. 5, § 7, should allege

---

[1] *Clark* v. *Flint,* 22 Pick. 231, 239. *Leach* v. *Fobes,* 11 Gray, 506. *Somerby* v. *Buntin,* 118 Mass. 279, 287. *Adams* v. *Messinger,* 147 Mass. 185. *Gloucester Isinglass & Glue Co.* v. *Russia Cement Co.* 154 Mass. 92. *New England Trust Co.* v. *Abbott,* 162 Mass. 148, 154. *Jones* v. *Parker,* 163 Mass. 564. *Roberts* v. *Cambridge,* 164 Mass. 176, 180–181. *Howe* v. *Watson,* 179 Mass. 30, 39. *Butterick Publishing Co.* v. *Fisher,* 203 Mass. 122, 130–132. *New York Central Railroad* v. *Stoneman,* 233 Mass. 258, *S. C.* 236 Mass. 81. *McCormick* v. *Proprietors of the Cemetery of Mount Auburn,* 285 Mass. 548. *Lonergan* v. *Highland Trust Co.* 287 Mass. 550, 559. *Lomasney* v. *Prendible,* 299 Mass. 273, 276. *Coastal Transit Co.* v. *Springfield Bus Terminal, Inc.* 302 Mass. 513. *New England Trust Co.* v. *Spaulding,* 310 Mass. 424, 429.

that there were no such rulings, regulations or orders which made it unlawful for the defendant to perform its obligations under the last mentioned article. Article 5, § 7, contains a promise of the defendant in general terms. The exception or qualification expressed in art. 1, § 7, although applicable to the entire instrument, is entirely separate from and not a part of or even referred to in art. 5, § 7. The plaintiffs could allege the general promise as set forth in art. 5, § 7, leaving it to the defendant to plead in defence any rule or regulation of any commission making it unlawful for the defendant to recognize assignments of wages, if there can be any such rule or regulation. *Stearns* v. *Barrett,* 1 Pick. 443, 450–451. *Commonwealth* v. *Hart,* 11 Cush. 130, 133–137. *Ansell* v. *Boston,* 254 Mass. 208, 211. *Murray* v. *Continental Ins. Co.* 313 Mass. 557, 563. Indeed, art. 1, § 7, seems to have added but little to the contract, since illegality would be a defence without such provision, and unless evident on the face of the instrument would commonly be pleaded by the defendant. *Morello* v. *Levakis,* 293 Mass. 450, 451–452.

4. The bill is not defective for failure to allege that the plaintiff had first sought arbitration under the elaborate provisions of the contract for the settlement of disputes. It is plain that those provisions contemplate the entire and final settlement of all controversies to which they apply. Under our decisions such provisions for arbitration do not oust the courts of jurisdiction. *Bauer* v. *International Waste Co.* 201 Mass. 197, 202–203. *Norcross Brothers Co.* v. *Vose,* 199 Mass. 81, 94. *Brocklehurst & Potter Co.* v. *Marsch,* 225 Mass. 3, 9. *Rosenblum* v. *Springfield Produce Brokerage Co.* 243 Mass. 111, 120. *Lakube* v. *Cohen,* 304 Mass. 156. And the contract is not an agreement for statutory arbitration under G. L. (Ter. Ed.) c. 251, §§ 14–22. There is no attempt to limit the arbitration to controversies which "might be the subject of a personal action at law or of a suit in equity" (see § 14). No court is "designated in the agreement" to which any award is to be returned (see §§ 8, 19, 22). It seems plain that the decision is intended to take effect without judgment in any court

(see § 20).   *Cueroni* v. *Coburnville Garage, Inc.* 315 Mass. 135, 140–141.   See *Spence, Bryson, Inc.* v. *China Products Co.* 308 Mass. 81, 85–86.

5. The remaining contention of the defendant is that this is a case involving or growing out of a labor dispute as defined by G. L. (Ter. Ed.) c. 149, § 20C, inserted by St. 1935, c. 407, § 1, and therefore that the plaintiffs must allege and prove the several preliminary matters required to be established by G. L. (Ter. Ed.) c. 214, § 9A, inserted by St. 1935, c. 407, § 4, before an injunction can issue in a case involving or growing out of a labor dispute.   See *Mengel* v. *Justices of the Superior Court*, 313 Mass. 238.   But we need not decide whether this bill to enforce the performance of an existing contract does or does not involve or grow out of a labor dispute, since it is possible for the plaintiffs to prevail in this suit without resort to any injunctive relief.   The facts that art. 5, § 7, of the contract, which the plaintiffs seek to enforce, is couched in negative language and that two of the prayers of the bill take the form of prayers for injunctive relief must not be allowed to confuse the situation.   In spite of its form, art. 5, § 7, of the contract is in real substance an affirmative promise to recognize assignments of wages. It can be enforced by a decree in affirmative form commanding the defendant to recognize such assignments.   A decree in that form would not in our opinion be an injunction within the meaning of G. L. (Ter. Ed.) c. 214, § 9A, and that section has no application to the case, whether or not the case involves or arises out of a labor dispute.   Although the word injunction is sometimes used to include more than merely preventive relief, it more commonly refers to relief of that character.   *Department of Public Utilities* v. *Trustees of New York, New Haven & Hartford Railroad*, 304 Mass. 664, 671. It is not the word that would ordinarily be used to describe a decree compelling the performance of a contract by the taking of affirmative action required by the terms of the contract.   The statute involved (G. L. [Ter. Ed.] c. 214, § 9A, inserted by St. 1935, c. 407, § 4) is the core of what is commonly called the anti-injunction law.   It is fair to say that its principal purpose was to regulate the issuance of

injunctions restraining the acts of labor unions in trade controversies, that is to say, to regulate preventive injunctions. If its purpose had been to regulate and restrict relief in equity of other kinds there would have been apt words to that effect. Instead, the statute refers only to relief by injunction. It is settled that the statute was not intended to change the law of substantive rights. *Simon* v. *Schwachman,* 301 Mass. 573, 579–582. *Quinton's Market, Inc.* v. *Patterson,* 303 Mass. 315, 318–319. *Fashioncraft, Inc.* v. *Halpern,* 313 Mass. 385, 389.

Moreover, the conditions imposed by § 9A upon the issuing of injunctions, while appropriate as regulations upon the issuing of preventive injunctions, are in a number of respects inappropriate if applied to ordinary kinds of affirmative relief. Thus paragraph (a) of subsection (1) refers only to "acts [that] have been threatened and will be committed unless restrained or [that] have been committed and will be continued unless restrained." Paragraph (b) requires a finding that "substantial and irreparable injury to the complainant's property will follow." Paragraph (c) requires a comparison of the injuries to the opposing parties to be expected from granting or denying relief. Paragraph (e) requires a finding that "the public officers charged with the duty to protect the complainant's property are unable or unwilling to furnish adequate protection." Subsection (2) requires notice of the hearing to be given to public officials charged with the duty to protect the "complainant's" property, again apparently assuming that prevention of a threatened injury is the relief sought. And subsection (5) provides in part that "every restraining order or injunction granted in a case involving or growing out of a labor dispute shall include only *a prohibition* [italics ours] of such specific act or acts as may be expressly complained of in the bill of complaint or petition . . .." See *Virginian Railway* v. *System Federation No. 40, Railway Employees Department of the American Federation of Labor,* 300 U. S. 515, 563. Such provisions as these, applicable alike to all cases without discrimination, would be out of place if the statute had been intended to control the granting of affirmative relief.

It is also significant to note that G. L. (Ter. Ed.) c. 220, § 13A, inserted by § 5 of St. 1935, c. 407 (the same act that inserted the anti-injunction provisions to which reference has just been made), in providing for the right of jury trial in certain contempt proceedings in labor cases, grants that right only where the contempt consists in "doing any act or thing in or by such writ, process, order, decree or command forbidden to be done by him" and so does not apply to a contempt which consists in failure to perform a decree ordering affirmative relief.

In our opinion, if at the hearing on the merits the plaintiffs prove the facts alleged, and if no other facts requiring a contrary result are disclosed, the plaintiffs will be entitled to a decree compelling the defendant to recognize assignments of wages in accordance with art. 5, § 7, of the contract and to pay to the union the sums due and to become due on such assignments as long as the contract remains in force and the union continues on its part substantially to perform the contract. The decrees must therefore be reversed, and an interlocutory decree must be entered overruling the demurrer.

*So ordered.*