**TEXTILE WORKERS UNION OF AMERI-CA (CIO) v. AMERICAN THREAD CO.**

Civ. A. No. 52–503.

United States District Court
D. Massachusetts.

June 5, 1953.

138

Jacob Minkin, New Bedford, Mass., for plaintiff.

Francis J. Vaas, A. Lane McGovern and Ropes, Gray, Best, Coolidge & Rugg, Boston, Mass., for defendant.

WYZANSKI, District Judge.

This is a suit under § 301 of the Labor Management Relations Act of 1947, commonly called the Taft-Hartley Act, 61 Stat. 156, 29 U.S.C.A. § 185, to order defendant to submit to arbitration the question whether under certain provisions of a collective bargaining contract with plaintiff it is liable for separation pay.

Section 301(a) provides that "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce * * * may be brought in any district court of the United States having jurisdiction of the parties * * *."

Since 1948 defendant, an employer, has had contracts with plaintiff, "a labor organization representing employees in an industry affecting commerce." The 1948 contract provided in Article VII that "any * * * controversy of any nature * * * between the Union and the Company, which has not been satisfactorily adjusted within fifteen (15) working days after the initiation of conferences between representatives of the Union and the Company shall be promptly referred to arbitration * * *. Questions involving changes in the * * * provisions of this Agreement shall not be subject to * * * arbitration." March 29, 1951 the parties, in two separate but substantially identical memoranda covering defendant's Hampton Yarn Division and Merrick Mills, modified and extended the

1948 contract. In each memorandum it was agreed that there shall be retirement separation pay which "shall become effective upon approval by the appropriate governmental authority and shall not be retroactive"; the parties "shall select by mutual agreement a new permanent arbitrator" (presumably in lieu of the person named in Article VII of the 1948 contract); and, as modified, the 1948 contract shall "continue in full force and effect * * * until March 15, 1953."

Defendant separated from employment ten persons whose cases are still in controversy. Plaintiff claims they are entitled to separation pay. Defendant rejects the claim on the ground that, in its view, the employees were separated before the 1951 memoranda received approval by the appropriate governmental agency. Plaintiff demanded that the controversy be submitted to arbitration; but defendant refused to comply.

 Plaintiff, thereupon, brought this suit for specific performance of what it claims is defendant's obligation to submit its claim to arbitration. Defendant contends that there is no arbitrable issue and that, if there were, this Court has no power to direct specific performance of an agreement to arbitrate. Each party moved for summary judgment.

Defendant's first point can readily be answered. As was evident in the discussion at bar, the controversy between the parties turns partly on the question as to when these ten persons were in fact separated from employment. Such factual issues are plainly arbitrable under the contract. Furthermore, issues as to the meaning of the terms in the contract are also arbitrable for the parties have excluded from arbitration only "*changes* in the terms and provisions" of the contract.

More troublesome is defendant's second point that this Court lacks the power specifically to enforce an arbitration provision in a collective bargaining contract.

Defendant's argument is that the federal courts cannot grant specific performance of arbitration contracts in the absence of statutory authority, Red Cross Line v. Atlantic Fruit Co., 264 U.S. 109, 44 S.Ct. 274, 68 L. Ed. 582; United States Asphalt Refining Co. v. Trinidad Lake Petroleum Co., D.C. S.D.N.Y., 222 F. 1006, and that the Federal Arbitration Act, 61 Stat. 669, 9 U.S.C. § 1 et seq., which excludes "contracts of employment of * * * any * * * class of workers engaged in foreign or interstate commerce" has been held not to give authority for specific performance of arbitration provisions in collective bargaining contracts. Amalgamated Ass'n of Street, Electric Ry. & Motor Coach Employees of America v. Pennsylvania Greyhound Lines, Inc., 3 Cir., 192 F.2d 310; International Union United Furniture Workers of America v. Colonial Hardwood Flooring Co., Inc., 4 Cir., 168 F.2d 33; Gatliff Coal Co. v. Cox, 6 Cir., 142 F.2d 876; Boston & Maine Transp. Co. v. Amalgamated Ass'n of Street & Electric Ry. & Motor Coach Employees of America, Division No. 718, D.C.D.Mass., 106 F.Supp. 334. Contra: Lewittes & Sons v. United Furniture Workers of America, D.C.S.D. N.Y., 95 F.Supp. 851. Compare: Sturges & Murphy, Some Confusing Matters Relating to Arbitration Under The United States Arbitration Act., 17 Law & Contemp. Prob. 580, 605–619; Recent Case, 65 Harv. L.Rev. 1239. This Court expressly declines to consider the correctness of the foregoing argument, since § 301 of the Taft-Hartley Act makes it unnecessary to state what authority this Court would have in the absence of statute, or what is the correct construction of the Federal Arbitration Act.

Section 301 is drafted in terms which appear to be exclusively jurisdictional. The statute does not expressly state what law shall be applied to determine the rights of the parties or their remedies.

 A substantial majority of the courts that have considered this section have concluded that it is a direction to develop a federal common law in connection with the rights of the parties (and presumably *a fortiori* in connection with their remedies). See International Union of Operating Engineers v. Dahlem Construction Co., 6 Cir., 193 F.2d 470, 475; Shirley Herman Co. v. International Hod Carriers, 2 Cir., 182 F.2d 806, 809, 17 A.L.R.

2d 609; Schatte v. International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators, 9 Cir., 182 F.2d 158, 164. Note 57 Yale L.J. 630. But see Mercury Oil Refining Co. v. Oil Workers International Union, 10 Cir., 187 F.2d 980, 983; Paterson Parchment Paper Co. v. International Brotherhood of Paper Makers, 3 Cir., 191 F.2d 252, 253, certiorari denied, 342 U.S. 933, 72 S.Ct. 376, 96 L.Ed. 694. This construction presents no constitutional difficulties. Under Article I § 8, cl. 3 of the Constitution Congress has the power to give to the federal judiciary authority to construct a corpus of common law to regulate commerce. Compare Clearfield Trust Co. v. United States, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838; D'Oench, Duhme & Co. v. Federal Deposit Ins. Corp., 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956. And such an exercise of Congressional power is a law of the United States, so that cases arising thereunder may be heard by a duly authorized United States Court established under Article III of the United States Constitution. See Wilson & Co., Inc., v. United Packinghouse Workers of America, D. C.S.D.N.Y., 83 F.Supp. 162, 165; Colonial Hardwood Flooring Co., Inc., v. International Union United Furniture Workers of America, D.C.D.Md., 76 F.Supp. 493, 496, affirmed on other grounds, 4 Cir., 168 F.2d 33. But though this construction of § 301 is permissible and constitutional, it is not plainly right. There is no satisfactory legislative declaration or history supporting this construction. It vastly extends the reach of federal law. It may curtail the effect of state law even in state courts; for if this construction of § 301 is correct it may be that state courts would be required by Article VI of the United States Constitution to treat federal law as supreme where there was in issue a labor contract in an industry affecting commerce. And if the state court is not required to apply federal law, then with respect to the same contract two conflicting rules are possible, depending upon the choice of forum.

Another possible construction of § 301 is that it is a Congressional direction to the federal courts to take jurisdiction of suits for violation of labor contracts and to apply to those cases federal law with respect to procedural questions, local law with respect to substantive questions, and federal or possibly state law with respect to remedial measures. Cf. Cox, Some Aspects of the Labor Management Relations Act, 1947 (II), 61 Harv.L.Rev. 274, 305. There is no doubt that under Article I, § 8, cl. 3 of the Constitution Congress can direct that controversies affecting commerce shall be governed by state law. Cf. Kentucky Whip & Collar Co. v. Illinois Central R. R. Co., 299 U.S. 334, 57 S.Ct. 277, 81 L.Ed. 270 (Ashurst-Sumners Act[1]); Williams v. Austrian, 331 U.S. 642, 67 S.Ct. 1443, 91 L.Ed. 1718, and Schumacher v. Beeler, 293 U.S. 367, 55 S.Ct. 230, 79 L.Ed. 433 (Bankruptcy Act[2]); Williams v. United States, 327 U. S. 711, 66 S.Ct. 778, 90 L.Ed. 962 (Assimilative Crimes Act[3]); Just v. Chambers, 312 U.S. 383, 61 S.Ct. 687, 85 L.Ed. 903, rehearing denied, 312 U.S. 668, 61 S.Ct. 687, 85 L.Ed. 903 (admiralty[4]). And that if Congress did enact such a law, controversies arising thereunder could be heard by a duly authorized court established under Article III of the Constitution. Mater v. Holley, 5 Cir., 200 F.2d 123. Cf. Osborn v. Bank of United States, 9 Wheat. 738, 6 L.Ed. 204; Kentucky Whip & Collar Co. v. Illinois Central R. R. Co.; Williams v. Austrian; Schumacher v. Beeler; Williams v. United States, all supra. See Mishkin, The Federal "Question" in the District Courts, 53 Col.L.Rev. 157, 184 et seq. This construction of § 301 may find some support in the legislative history. See Sen.Rep.No. 105, 80th Cong., 1st Sess. 15, 17; H.R.Rep.No. 245, 80th Cong., 1st Sess. 46; remarks of Senator Taft, 93 Cong.Rec. 3955. Compare the remarks of Senator Murray, 93 Cong.Rec. 4153, and Sen. Minority Rep.No. 105, Part 2, 80th Cong., 1st Sess. 13, with the remarks of Senator Ball, 93 Cong.Rec. 5146. But this construction also has its disadvantages be-

1. 49 Stat. 494.
2. 11 U.S.C.A. § 1 et seq.
3. 18 U.S.C.A. § 13.
4. 46 U.S.C.A. § 183.

cause it might mean that in some states the federal national labor policy would be placed at the mercy of inadequate, obsolete, or otherwise undesirable local laws.

■ Since both suggested constructions of § 301 present difficulties, only when the Supreme Court of the United States speaks shall we know finally whether federal courts acting under § 301 are to apply federal or local law to determine the *rights* of the parties. However, in the instant case we need not wait upon that decision. Fortunately here it has no practical importance. Under either so-called federal common law or under Massachusetts law this contract to arbitrate is valid and creates rights in the parties. Compare Red Cross Line v. Atlantic Fruit Co., 264 U.S. 109, 121, 44 S.Ct. 274, 68 L.Ed. 582; Mass.G.L. (Ter.Ed.) c. 150, § 11, c. 251, §§ 14–22. See A.L.I. Restatement, Contracts § 550.

Although there is room for a difference of opinion as to what law governs the *rights* of the parties, it seems to this Court that the Congress which enacted § 301 would have preferred that *remedies* should be determined without reference to state law and should include specific enforcement of arbitration clauses in labor contracts.

■ Admittedly, the legislative language and history are very thin on this point. There is no square facing of the issue whether § 301 authorizes specific performance of arbitration clauses in labor contracts. But, as House Conference Report No. 510, 80th Cong. 1st Sess., p. 42 shows, the record is not entirely barren. Konwing the importance of voluntary labor arbitration agreements in maintaining industrial and labor peace, the Senate proposed making it "an unfair labor practice to violate * * * an agreement to submit a labor dispute to arbitration. The conference agreement omits this provision of the Senate amendment. Once parties have made a collective bargaining contract the enforcement of the contract should be left to the usual processes of the law and not to the National Labor Relations Board." Of course, if this quotation is read too literally it says only that the en-

forcement of arbitration clauses is to be by the "usual" judicial, as distinguished from administrative, processes. It leaves unsettled the problem whether the judicial process is a judgment for damages or a decree of specific performance. But the legislative purpose in enacting § 301 was obviously to prescribe an "effective method of assuring freedom from economic warfare for the term of the agreement" and "to encourage the making of agreements and to promote industrial peace through faithful performance by the parties [of] collective agreements * * * enforceable in the federal courts." Sen.Rep.No. 105, 80th Cong., 1st Sess., 16. In short, Congress, had it considered the matter, would have expected federal courts to accord specific performance of arbitration clauses; and would not expect the national judiciary to apply a checker-board set of remedies adapted to the laws of the several states, most of which do not provide for specific performance of arbitration clauses in labor contracts. See A.L.I. Restatement, Contracts § 550, Special Note. Gregory and Orlikoff, The Enforcement of Labor Arbitration Agreements, 17 U. of Chi.L.Rev. 233, 236. And, "Flinch as we may, what we [judges] do, and must do, is to project ourselves, as best we can, into the position of those who uttered the words, and to impute to them how they would have dealt with the concrete occasion." United States v. Klinger, 2 Cir., 199 F.2d 645, 648. Cf. Vermilya-Brown Co. v. Connell, 335 U.S. 377, 388, 69 S.Ct. 140, 93 L.Ed. 76. Following that canon of legislative construction, this Court can reach no other result than to conclude that § 301 provides, as a nationally available remedy, specific performance of arbitration clauses in labor contracts in industries affecting commerce.

■ There is another, but more mechanical way of reaching the conclusion that in suits under § 301 federal law directs the specific performance of arbitration clauses. The first step is to refer to the traditional rule that the availability of specific performance is a matter not of right, but of remedy, and that like other matters of remedy it is governed by the law of the forum. Red Cross Line v. Atlantic

Fruit Co., 264 U.S. 109, 44 S.Ct. 274, 68 L. Ed. 582; Gatliff Coal ·Co. v. Cox, 6 Cir., 142 F.2d 876, 881; Boston & Maine Transp. Co. v. Amalgamated Ass'n Street & Electric Ry. & Motor Coach Employees, D.C.D.Mass., 106 F.Supp. 334, 335. But see Hamilton Foundry & Machine Co. v. International Molders & Foundry Workers Union of North America, 6 Cir., 193 F.2d 209, 215. Cf. Guaranty Trust Co. v. York, 326 U.S. 99, 105–107, 65 S.Ct. 1464, 89 L. Ed. 2079. Levinson & Hall v. Deupree, 73 S.Ct. 914. The second step is to declare that though the federal rule is in general not to enforce specifically executory arbitration agreements, that rule rests on merely weak historical arguments, and should be abandoned whenever, as is the case in the Taft-Hartley Act, there is sufficient indication that the legislation in a particular field intended the maximum degree of enforcement of arbitration contracts. See the concurring opinion of Wolfe, J., in Latter v. Holsum Bread Co., 108 Utah 364, 375, 160 P.2d 421, 426.

 In reaching the conclusion that under § 301 of the Taft-Hartley Act federal courts can specifically enforce arbitration clauses in labor contracts, this Court has not overlooked either the Federal Arbitration Act of 1925, 9 U.S.C. § 1 et seq., or the Norris–LaGuardia Act of 1932, 29 U.S.C.A. § 101 et seq. The former was drafted a generation ago, prior not only to the Taft-Hartley Act but also the labor relations situation that has developed since the 1930's. If that Act reflects any policy toward enforcement of voluntary arbitration clauses in labor contracts, it is a policy strictly confined to the interpretation and direct enforcement of that statute. The Norris–LaGuardia Act is likewise a statute earlier than the Taft–Hartley Act. The general structure, detailed provisions, declared purposes, and legislative history of that statute show it has no application to cases where a mandatory injunction is sought to enforce a contract obligation to submit a controversy to arbitration under an agreement voluntarily made. Milk and Ice Cream Drivers & Dairy Employees v. Gillespie Milk Products Corp., 6 Cir., 203 F.2d 650; Textile Workers Union of America v. Aleo Mfg. Co., D.C.M.D.N.C., 94 F.Supp. 626; Mountain States Division No. 17 v. Mountain States Tel. & Tel. Co., D.C.D.Colo., 81. F.Supp. 397. See Virginian Ry. Co. v. System Federation No. 40, 300 U.S. 515, 563, 57 S.Ct. 592, 81 L. Ed. 789; Sanford v. Boston Edison Co. 316 Mass. 631, 637–638, 56 N.E.2d 1, 156 A. L.R. 644; Note, 37 Va.L.Rev. 737. But see United Packing House Workers v. Wilson & Co., D.C.N.D.Ill., 80 F.Supp. 563, 567–570. Indeed one of the very objects of the statute was to induce the parties instead of promptly going to court for broad injunctions hastily issued, restraining tortious or other conduct, first "to make every reasonable effort to settle such dispute * * * by * * * voluntary arbitration." § 8 of the Norris–LaGuardia Act, 47 Stat. 72, 29 U.S.C.A. § 108.

 Defendant's final point is that this case cannot be sent to arbitration because no arbitrator has been named under the 1951 memoranda. But this defect can be and should be cured by this Court adopting as a guiding analogy the practice under § 5 of the Federal Arbitration Act, 9 U.S.C. § 5. If the parties are unable within ten days to agree upon an arbitrator, this Court will appoint one.

Plaintiff is directed to prepare a suitable decree adopting, whenever practical, the forms and procedures which would be used if this case fell within the scope of the Federal Arbitration Act.