**W. L. MEAD, Inc., Plaintiff, Appellant,**

v.

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, Local Union No. 25, A. F. of L., Defendant, Appellee.**

**No. 4898.**

United States Court of Appeals, First Circuit.

Nov. 18, 1954.

Bernard B. Gould, Boston, Mass., for appellant.

Stephen J. D'Arcy, Jr., Boston, Mass., for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

MAGRUDER, Chief Judge.

W. L. Mead, Inc., appeals from an order of the district court denying an application for a temporary injunction forbidding the Teamsters Union from continuing a strike and peaceful picketing of appellant's places of business. The ground of the denial, as appears from the district court's opinion, was that the injunction sought was precluded by § 4 of the Norris-LaGuardia Act, 47 Stat. 70, 29 U.S.C.A. § 104. Our appellate jurisdiction to review this interlocutory order is conferred by 28 U.S.C. § 1292(1).

■ The case originated in a civil action under § 301 of the Labor Management Relations Act, 1947, 61 Stat. 156, 29 U.S.C.A. § 185, filed by the present appellant against the Teamsters Union, and against the First National Bank of Boston as Trustee believed to be in possession of funds of the defendant Union. In the complaint it was alleged that plaintiff, an Ohio corporation, is engaged in the business of common carrier of general commodities in interstate commerce; that plaintiff and defendant Union are parties to an existing collective bargaining contract which became effective April 12, 1953; that Article VIII of the contract (copy attached to the complaint) provides: "Should any dispute, grievance or complaint arise during the life of this agreement which the Business Representative fails to adjust, the dispute, grievance or complaint shall be referred to the Arbitration Panel which Panel shall be the exclusive means of adjudicating all matters"; that on September 10, 1954, while plaintiff was in all respects in compliance with the terms of the collective bargaining contract, "a dispute arose concerning the hours of employment of an employee of the plaintiff"; that the business agent of defendant Union, in violation of the terms of the contract, declined to submit the dispute to the arbitration procedure specified in the contract, and upon the contrary, also in violation of the terms of the contract, called plaintiff's employees out on strike and set up picket lines in front of plaintiff's places of business in Boston, Springfield, Worcester and Providence; that these activities of the defendant Union, still continuing, have brought the plaintiff's business to a virtual standstill and caused irreparable damage to the plaintiff. There were also allegations in the complaint of occasional acts of

violence, but as stated in the opinion of the district court these allegations "were not referred to at the hearing, and I do not find any such present conduct." The complaint sought to recover damages for the past violations of the contract and asked for temporary and permanent injunctions restraining defendant Union from continuing its breach of contract and from interfering with the conduct of the plaintiff's business by means of the strike, picketing, or otherwise.

Appellant contends that the injunction sought is not forbidden by the terms of the Norris-LaGuardia Act because (1) the case is not one "involving or growing out of any labor dispute" within the meaning of that Act, and (2) even if the injunction were otherwise within the terms of the interdiction of § 4 of the Norris-LaGuardia Act, those provisions of the earlier statute have been *pro. tanto* repealed by § 301(a) of the Labor Management Relations Act under which the present complaint was brought. We do not think that either of these points is well taken.

(1) Section 4 of the Norris-LaGuardia Act provides that no court of the United States shall have jurisdiction to issue any restraining order or temporary or permanent injunction "in any case involving or growing out of any labor dispute" to prohibit any person or persons participating or interested in such dispute from doing, whether singly or in concert, any of a number of enumerated acts, including ceasing or refusing to perform any work or to remain in any relation of employment, and *giving* publicity to the existence of, or the facts involved in, any labor dispute, whether by advertising, speaking, patrolling, or in any other method not involving fraud or violence. Section 13(c) of the Act provides that the term "labor dispute" as used in the Act "includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee." When the present complaint describes the controversy as a dispute "concerning the hours of employment of an employee of the plaintiff", this seems to us incontestably to describe a "labor dispute" within the statutory definition, and no less so because the dispute is one that may be resolved or determined on its merits by reference to the terms of a collective bargaining agreement. In In re Third Ave. Transit Corp., 2 Cir., 1951, 192 F.2d 971, where the controversy between the union and the employer was as to whether it would be a violation of existing bargaining agreements for the employer to accede to a union demand for reduction of the work week without diminution of pay, the court, at page 973, had this to say:

"It is clear beyond doubt that the parties are in controversy concerning the terms and conditions of employment and, therefore, a 'labor dispute' exists between them within the scope of the Norris-La Guardia Act, 29 U.S.C.A. § 101 et seq., as such a dispute is therein defined. And this is so whether or not the appellants' conduct constitutes a breach of any collective bargaining agreement between the parties. Alcoa S. S. Co. v. McMahon, 2 Cir., 173 F.2d 567."

See also the opinion of Judge Carter in Sound Lumber Co. v. Lumber & Sawmill Workers Local Union, D.C.N.D.Cal.1954, 122 F.Supp. 925.

(2) Section 301 of the Labor Management Relations Act, under which the complaint in the present case was brought, provides in subsection (a) as follows, 61 Stat. 156:

"Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of

the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

Nowhere in the section is it expressly provided that the terms of the Norris-LaGuardia Act shall not be applicable to suits for violation of collective bargaining agreements; and § 301 contains no provisions necessarily inconsistent with the terms of the earlier Act. It may be true, as appellant urges, that the use of the word "suits" in § 301(a) indicates that Congress contemplated the giving by the federal courts of appropriate equitable relief for the violation of collective bargaining agreements as well as the giving of money damages in actions at law. In that view, equitable relief may sometimes be given in terms which do not trench upon the interdictions of § 4 of the Norris-LaGuardia Act. See Textile Workers Union v. American Thread Co., D.C.Mass.1953, 113 F.Supp. 137.

 It is an accepted canon of construction that repeals by implication are not favored. The persuasive force of this aid to construction may be somewhat weakened where the question is whether the later enactment has by implication repealed some obscure and generally forgotten statute. But here the earlier enactment is a significant and tremendously important piece of legislation which the Congress evidently had specifically in mind when it came to enact the Labor Management Relations Act in 1947. Thus in § 101 of the Labor Management Relations Act, the Congress amended § 8 of the National Labor Relations Act so as to forbid certain unfair labor practices by labor organizations, 61 Stat. 141. Section 10 of the National Labor Relations Act, as amended, authorized the Board to prevent any person, including a labor organization, from engaging in any unfair labor practice, as defined, 61 Stat. 146. The Board was empowered to petition a court of appeals for a decree enforcing its orders, and in conjunction with such petition to apply "for appropriate temporary relief or restraining order". 61 Stat. 147–48. And in § 10(h) of the National Labor Relations Act, as amended, it was provided that, when granting appropriate temporary relief or a restraining order or making a decree enforcing an order of the Board, the jurisdiction of the courts sitting in equity should not be limited by the provisions of the Norris-LaGuardia Act, 61 Stat. 149. But note here that the Congress did not throw the door open wide to federal injunctions against strikes and picketing at the suit of private employers in private litigation, but sanctioned a departure from the terms of the Norris-LaGuardia Act only where the National Labor Relations Board, a public agency, was seeking enforcement of one of its orders, or where a party aggrieved by a final order of the Board was seeking review of a Board order. See Bakery Sales Drivers Local Union v. Wagshal, 1948, 333 U.S. 437, 442, 68 S.Ct. 630, 92 L.Ed. 792. Likewise, the Congress provided in § 208(b) of the Labor Management Relations Act, 61 Stat. 155, 29 U.S.C.A. § 178 (b), that the terms of the Norris-LaGuardia Act defining and limiting the jurisdiction of federal courts sitting in equity should not be applicable in suits where a public officer, the Attorney General of the United States, petitions a district court for an injunction against a strike or lock-out in certain national emergencies; here again the door was not thrown open to private employers to obtain injunctive relief in the teeth of the prohibitions of the Norris-LaGuardia Act. It is also worth noting that in § 303 of the Labor Management Relations Act, 61 Stat. 158–59, 29 U.S.C.A. § 187, it was made unlawful for labor organizations to engage in certain boycotts or other forbidden combinations, and it was provided that whoever should be injured in his business or property by reason of such unlawful activities "may sue therefor in any district court of the United States * * *, and shall recover the damages by him sustained and the cost of the suit." Recovery here, by private employers in private litigation, seems to be limited to judgments for damages.

As in § 301, which authorizes private suits for violation of collective bargaining contracts, § 303 contains no specific provision lifting the ban of § 4 of the Norris-LaGuardia Act. Whatever may be the force of the argument that when an employer has accepted in good faith the procedures of the National Labor Relations Act, as amended, and has made a collective bargaining contract with the duly certified representative of his employees, the employer ought then to be able to obtain an injunction against a strike or picketing which constitutes a violation of the collective agreement, this is a consideration of policy properly to be addressed to the Congress, not to the courts.

For these reasons we conclude that the district court correctly ruled as a matter of law that it had no jurisdiction to issue the temporary injunction prayed for in the complaint. See accord: Sound Lumber Co. v. Lumber & Sawmill Workers Local Union, supra.

The order of the District Court is affirmed.