**UNITED STEELWORKERS OF AMERICA, C. I. O. and Walter Burke, Plaintiffs,**

v.

**GALLAND–HENNING MFG. CO., Defendant.**

**Civ. A. No. 6174.**

United States District Court
E. D. Wisconsin.

March 12, 1956.

Lawrence Gillick, Milwaukee, Wis., Goldberg, Devoe, Brussell & Shadur, Chicago, Ill., for plaintiff.

Stern & O'Brien, Milwaukee, Wis., for defendant.

TEHAN, Chief Judge.

The defendant Galland-Henning Mfg. Co. has moved the Court pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., to dismiss the amended complaint and the amended petition herein upon the grounds that this Court has no jurisdiction over the subject matter involved and said amended complaint and amended petition fail to state any claim upon which relief can be granted. No suggestion having been made that there are any questions of fact involved on this motion, we shall proceed to take up the legal questions involved.

The specific question presented here is whether Section 301(a) of the Labor Management Relations Act requires or permits the enforcement of an agreement to arbitrate pursuant to a collective bargaining contract between a union and an employer. That section provides as follows:

"(a) Suits for violation of contracts between an employer and a labor organization representing em-

ployees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." Section 301(a) Labor Management Relations Act, 29 U.S.C.A. § 185(a).

There is but one federal appellate court which has ruled directly on the point here involved, Lincoln Mills of Alabama v. Textile Workers, 5 Cir., 1956, 230 F.2d 81. In that case the Court of Appeals of the Fifth Circuit held that a collective bargaining contract is a "contract of employment" within the exclusion clause of the Federal Arbitration Act, 9 U.S.C.A. § 1, and consequently does not authorize judicial enforcement of a contractual undertaking to submit grievances arising under such an agreement to arbitration; that Section 301 is purely procedural and grants no substantive rights not otherwise to be found in applicable federal or state law; Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp., 1955, 348 U.S. 437, 75 S.Ct. 489, 99 L.Ed. 510, and that since no other federal or state law requires or permits such relief, the federal district courts are without authority to enforce an agreement to arbitrate labor disputes.

It seems reasonably clear that the Federal Arbitration Act does not authorize the judicial enforcement of agreements to arbitrate labor disputes. Lincoln Mills v. Textile Workers, supra, and the authorities cited therein. Also, see, Bernhardt v. Polygraphic Co. of America, 350 U.S. 198, 76 S.Ct. 273. Even in Textile Workers Union of America (C.I.O.) v. American Thread Co., D. C.Mass.1953, 113 F.Supp. 137, the principal case cited as authority for a federal district court to direct enforcement of a labor arbitration agreement, the Federal Arbitration Act is not given as authority for that decision, but rather is cited as *not forbidding* such use of the

court's equity powers. At page 142 of 113 F.Supp. thereof, it is stated:

"If that Act reflects any policy toward enforcement of voluntary arbitration clauses in labor contracts, it is a policy strictly confined to the interpretation and direct enforcement of that statute."

Confining ourselves for the moment to the point directly involved, the enforceability of agreements to arbitrate labor disputes, we find, in addition to the only federal appellate decision, the Lincoln Mills case, a number of federal district court decisions arrayed as follows:

Those which find authority in the federal court to enforce agreements to arbitrate labor disputes: Textile Workers Union of America (C.I.O.) v. American Thread Co., D.C.Mass.1953, 113 F.Supp. 137; Insurance Agents' International Union A. F. of L. v. Prudential Ins. Co., D.C.Pa.1954, 122 F.Supp. 869; Evening Star Newspaper Co. v. Columbia Typographical Union, D.C.D.C.1954, 124 F. Supp. 322; International Union, etc., v. Buffalo Springfield Co., D.C.S.D.Ohio 1955, 131 F.Supp. 667; United Textile Workers of America, A. F. L. v. Goodall-Sanford, Inc., D.C.S.D.Maine 1955, 129 F.Supp. 859; Textile Workers Union v. Lincoln Mills, D.C.N.D.Ala.1955, 36 L. R.R.M. 2361, later overruled by the Fifth Circuit Court of Appeals in the decision discussed above.

Those federal district courts, which in addition to the Lincoln Mills, supra, appellate court decision previously discussed, deny the authority of federal district courts to enforce labor arbitration agreements are the following: Local 205, United Elec., etc., v. General Electric Co., D.C.Mass.1955, 129 F.Supp. 665; Newspaper Guild v. Herold-Traveler, D.C. Mass.1955, 140 F.Supp. 759; Newspaper Guild of Pawtucket v. Times Publishing Co., D.C.R.I.1955, 131 F.Supp. 499, 501.

The most curious departure the Lincoln Mills Fifth Circuit appellate court decision makes from the district court decisions which deny the availability of injunctive relief in the federal district court in enforcing agreements to arbi-

trate labor disputes, is found in the respective applications of the Norris-La Guardia Act to the point in question.

In the Times Publishing Co. case, supra, for example, the Court said:

"It is well settled that the federal rule is in general not to compel specific performance of executory agreements to arbitrate disputes. Red Cross Line v. Atlantic Fruit Co., 264 U.S. 109, 44 S.Ct. 274, 68 L.Ed. 582; United States Asphalt Refining Co. v. Trinidad Lake Petroleum Co., D.C.S.D.N.Y.1915, 222 F. 1006. However, specific performance of such executory agreements may be enforced when Congress has directed the federal courts to afford this relief. The Anaconda v. American Sugar Refining Co., 322 U.S. 42, 64 S.Ct. 863, 88 L.Ed. 1117.

"Unless it can be said that Section 301 is a mandate to federal courts to enforce specific performance of arbitration provisions in collective bargaining agreements in proper cases, this Court lacks jursdiction to do so.

"Since the hearing on the instant motions at the conclusion of which I reserved decision, the Supreme Court has in my opinion in the case of Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp., 348 U.S. 437, 75 S. Ct. 489 [99 L.Ed. 510, 35 LRRM 2643], set forth clearly the meaning and scope to be given to said section. In that case the majority of the Court held that Section 301 was a mere procedural provision whereby Congress directed the federal district courts to treat an unincorporated labor union appearing as a litigant in a case involving a breach of a collective bargaining agreement as a natural or corporate legal person and to do so regardless of the amount in controversy or want of diversity of citizenship.

\* \* \* \* \* \*

"In granting such status to an unincorporated labor union Congress did not intend to overturn the long existing rule that specific performance of agreements to arbitrate disputes arising under collective bargaining agreements could not be compelled by resort to federal courts of equity.

"It is my considered opinion that this Court is without jurisdiction to grant the relief sought by the plaintiff. The motion of the plaintiff for summary judgment is denied; the motion of the defendant to dismiss is granted."

And again in the General Electric Co. case, supra, it is stated [129 F.Supp. 666]:

"There can be no doubt that the refusal to arbitrate the interpretation and application of a wage rate, and of a discharge, although an alleged breach of a collective bargaining agreement, constitutes a labor dispute. W. L. Mead v. International Brotherhood, supra [1 Cir., 217 F.2d 6]. With certain specific exceptions the Norris-La Guardia Act in terms forbids injunctions in all labor disputes. Arbitration is not one of the stated exceptions. At the same time, however, it must be recognized that when the Norris-La Guardia Act was enacted compulsory arbitration was an unavailable remedy, and logically could scarcely be expected to be included in the list of exceptions. It is also to be noted that the act did give affirmative approval of voluntary arbitration. 29 U.S.C.A. § 108.

\* \* \* \* \* \*

"I am forced to conclude that the plain language of the Norris-La Guardia Act forbids the issuance of an injunction. Under the circumstances reliance on generalizations in the forms of declarations of policy which might lead me to think that Congress would have intended an exception for a situation which it does not appear that it anticipated, had it been visualized, seems to go beyond my powers. Furthermore, Congress had full opportunity to pro-

vide that exception itself when it passed the Labor Management Act, 29 U.S.C.A. § 141 et seq., if by that act it had a purpose to create injunctive remedies. Having in mind that implied revocations are not favored, I discover nothing in the act, or in its legislative history, to warrant a finding that it did so. It becomes unnecessary to review the other aspects of American Thread. The motion to strike the prayer for an injunction is granted for want of jurisdiction."

 It is this Court's considered opinion that the Norris-La Guardia Anti-Injunction Act constitutes an insuperable bar to the granting of the relief sought. In sum, that Act bars the use of the Court's injunctive relief to all "labor disputes". Certainly grievances arising under the usual labor contract, such as here, are clearly labor disputes by any accepted definition of that term. It may well be that if the Norris-La Guardia Act were promulgated in a more modern labor relations era, exception might have been made in the case of voluntary agreements to arbitrate labor disputes, but that is sheer speculation. While it is attractive to state, in effect, as did Judge Wyzanski in the American Thread Co. case, supra, that modern concepts of labor relations and certain general statements of policy contained in federal law, point to giving vitality to solemn agreements to forego strikes and lockouts in exchange for enforceable agreements to arbitrate, it is not for this Court to second-guess the legislative branch of the Government. In this respect, it should be noted that there are many labor relations experts who feel that "voluntary labor arbitration" should be kept at just that, which leads one to the conclusion that any attempts to translate the growing and now almost general acceptance of arbitration as a substitute for economic force, whether by consensus of labor experts or by generalizations of the national labor policy, should not be turned into a fiat to direct arbitration when it ceases to be voluntary, even though there be prior sanction by a solemnized written contract. Witness the following quotations from the last annual meeting of the Section of Labor Relations Law of the American Bar Association:

"* * * In this connection it is worth while to observe the testimony of Dr. George W. Taylor before the Pennsylvania Governor's Commission on Labor Legislation emphasizing his belief that the less legislation on this subject the better, that the soundest policy is to keep the government out of the field and to encourage the parties to set up their own machinery.

"In somewhat similar fashion Dr. Alexander Fry of the University of Pennsylvania Law School, in the same proceeding, expressed grave doubt as to the desirability of such legislation and the possible adverse effect it may have on voluntary arbitration and labor relations on a long-range basis.

* * * * * *

"The importance of keeping labor-management arbitration on a completely voluntary basis can hardly be overemphasized. It is, of course, initially a private arrangement entered into voluntarily by the parties for the final settlement of non-legal controversies by a neutral third party as a means of preventing resort to economic force, and which controversies neither party ordinarily would be willing to submit to the determination of a court."

Special mention should be made of a federal district court decision, which while not directly in point, is highly suggestive and important not only because it arose in the Seventh Circuit, but also because of its persuasive reasoning, United Packing House Workers of America v. Wilson & Co., D.C.N.D.Ill.E.D.1948, 80 F.Supp. 563, at pages 567–568, wherein it is stated:

"There is nothing in either the text or the legislative history of the Labor Management Relations Act of

1947 to indicate any intention on the part of Congress of conferring jurisdiction on Federal trial courts in labor disputes, except to the limited extent that such jurisdiction was expressly conferred. Amazon Cotton Mill Co. v. Textile Workers Union, 4 Cir., 167 F.2d 183. It is also clear that Congress did not intend, either by expression or by necessary implication, that private parties should have a right to injunctive relief even as an ancillary remedy in the permitted suit for damages. International Longshoremen's & Warehousemen's Union v. Sunset Line & Twine Co., D.C., 77 F.Supp. 119, 122.

"The Act expressly confers jurisdiction on the District Court to issue injunctions in certain specified cases. Under Section 10(j), of the Act the District Courts are expressly given jurisdiction to grant injunctions upon petition of the Board after the latter has issued a complaint charging an unfair labor practice; under Section 10(l) the District Courts are given jurisdiction to grant injunctions upon petition of an officer or the regional attorney of the Board in certain cases involving jurisdictional strikes and secondary boycotts; under Section 208 the District Courts are authorized to enjoin strikes and lockouts affecting a substantial part of interstate commerce and imperiling the national health or safety regardless of the provisions of the Norris-La Guardia Act, but only upon the petition of the Attorney General following a report of a board of inquiry and direction by the President; and under Section 303 the District Courts are given jurisdiction of suits for damages arising out of the jurisdictional strikes and boycotts.

"Having thus expressly designated specific circumstances under which Federal District Courts may issue injunctions in labor disputes,

it is clear that Congress did not intend by Section 301(a) and (b) of the Act to confer jurisdiction upon Federal trial courts to grant injunctive relief on petition of private parties in a labor dispute."

The amended complaint and the amended petition herein failing to state any claims upon which relief can be granted, the defendant's motion to dismiss is granted.