**A. H. BULL STEAMSHIP CO.,**
Plaintiff-Appellee.

v.

**SEAFARERS' INTERNATIONAL UNION OF NORTH AMERICA, ATLANTIC AND GULF DISTRICT, AFL–CIO,**
Defendant-Appellant.

No. 123, Docket 24840.

United States Court of Appeals
Second Circuit.

Argued Oct. 8, 1957.
Decided Nov. 21, 1957.

See also 250 F.2d 332, reversing 156 F.Supp. 190.

Seymour W. Miller, Brooklyn, N. Y., for defendant-appellant.

James V. Hayes, of Donovan, Leisure, Newton & Irvine, New York City (A. V. Cherbonnier, of Satterlee, Browne & Cherbonnier, and Theodore S. Hope, Sidney P. Howell, Jr., and Helmut J. F. Furth, of Donovan, Leisure, Newton & Irvine, New York City, on the brief), for plaintiff-appellee.

Before CLARK, Chief Judge, and LUMBARD and MOORE, Circuit Judges.

CLARK, Chief Judge.

A. H. Bull Steamship Co. brought suit below against the defendant Union seeking declaratory and injunctive relief and damages for the defendant's alleged breach of the collective bargaining agreement between the parties. Bull then moved for a preliminary injunction restraining the Union from continuing the peaceful strike then in progress, which constituted the alleged breach of contract. The trial court heard the motion on affidavits and briefs and entered an injunction *pendente lite* of substantial scope against continuance of the strike.[1] Its opinion is reported in D.C.E.D.N.Y., 155 F.Supp. 739. This appeal from the order of injunction followed.

The basic facts are not in dispute. Bull is an operator of ships engaged in interstate commerce. The Union represents unlicensed personnel aboard Bull's ships. The parties entered into a collective bargaining agreement effective October 15, 1956, which runs until September 30, 1958. The agreement provides in part that "[t]here shall be no strikes, lockouts, or stoppages of work" while its provisions are in effect. On June 17, 1957, the Union sought to renegotiate certain wages. These negotiations were unsuccessful and on August 19, 1957, the Union called a strike which still continued when the trial court issued its order. The parties disagree as to the scope of the no-strike clause and whether

---

[1]. The main provisions of the injunction are contained in the following paragraphs:

"Ordered that, effective on October 1, 1957, at 5 P.M., Eastern Daylight Savings Time, defendant, Seafarers' International Union of North America, Atlantic and Gulf District, AFL–CIO, its officers, agents, members, servants, employees, attorneys, and all persons in active concert or participation with them, who shall or may receive actual notice of this Order, be and the same hereby are enjoined and restrained, during the pendency of this action, from picketing, striking, or inciting, causing, inducing, or, in any manner, directly or indirectly, supporting any work stoppage aboard any of the vessels owned or operated by plaintiff, A. H. Bull Steamship Co., or any of its subsidiaries, wherever any such vessels may be situate or, during the pendency of this action, may call; and it is

"Further Ordered that the said defendant specifically perform its agreement to furnish the plaintiff with capable, competent, and physicially fit persons when and where they are required, and of the ratings needed to fill vacancies necessitating the employment of Unlicensed Personnel, in ample time to prevent any delay in the scheduled departure of any vessel covered by said agreement, * * * *"

Defendant objects to the scope of the injunction as to parties defendant, as well as plaintiff, and to the findings incorporated in the opinion as made without a hearing for the presentation of testimony. We do not reach these issues.

a strike over wages constitutes a breach of the agreement. We do not decide this issue because we hold that in any event the trial court exceeded its jurisdiction in issuing the preliminary injunction.

 Section 4 of the Norris-LaGuardia Act of March 23, 1932, 29 U.S.C. § 104, deprives federal courts of jurisdiction to issue injunctions which prohibit peaceful strikes in cases "involving or growing out of any labor dispute." No one controverts that this is a peaceful strike. Section 13(c) of the Act, 29 U.S.C. § 113(c), provides:

> "The term 'labor dispute' includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee."

This case involves an impasse in renegotiation of wages. The Union maintains that the no-strike clause has no application to a strike for this purpose. Bull contends otherwise. But the basic controversy concerns wages—terms or conditions of employment—and thus, under § 13(c), this is a labor dispute. Nothing in the Act makes its provisions inapplicable where, after a labor dispute arises, one party takes action which constitutes a breach of a contract between them. It is immaterial that the strike might be a breach of the Union's duty under the collective bargaining agreement or that the controversy itself might be determined by reference to it. W. L. Mead, Inc. v. International Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of America, 1 Cir., 217 F.2d 6; In re Third Avenue Transit Corp., 2 Cir., 192 F.2d 971; Alcoa S. S. Co. v. McMahon, D.C.S.D.N.Y., 81 F.Supp. 541, affirmed 2 Cir., 173 F.2d 567, certiorari denied 338 U.S. 821, 70 S.Ct. 65, 94 L.Ed. 498. Hence under § 4 of the Act, if still applicable, the trial court would lack jurisdiction to issue its preliminary injunction in the present labor dispute.

So much appears to be common ground between the parties and with the court. The real issue is whether or not there has been a repeal by implication of the Norris-LaGuardia Act. The court found that § 301 of the Taft-Hartley Act of June 23, 1947, 29 U.S.C. § 185, as interpreted in Textile Workers Union of America v. Lincoln Mills of Alabama, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972, authorized it to issue the injunction. The question thus presented is whether or not this later statute repeals the Norris-LaGuardia Act to the extent that federal courts will now have jurisdiction to enjoin a peaceful strike which constitutes a breach of a no-strike clause in a collective bargaining agreement. As Bull itself states, "[t]his Court's problem is to reconcile these two laws, in the light of the circumstances of this case and of the Supreme Court's decision of June 3, 1957 in Textile Workers Union [of America] v. Lincoln Mills, 353 U.S. 448 [77 S.Ct. 912, 1 L.Ed.2d 972]."

Section 301(a) provides:

> "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce * * * may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

Textile Workers Union of America v. Lincoln Mills of Alabama, supra, 353 U.S. 448, 77 S.Ct. 912, does clearly hold that this section is more than procedural and gives substantive rights grounded in a body of federal law which in a proper case may be enforced by equitable relief. There the collective bargaining agreement between the union and the employer included both an arbitration clause and a no-strike clause. After grievance procedures had been exhausted to no avail, the union demanded that the employer arbitrate differences concerning work loads and work assignments. The

employer refused, and the union brought an action under this statute in the federal district court to compel the employer to arbitrate. The district court concluded that it had jurisdiction and ordered the employer to comply with the arbitration provision. The Court of Appeals reversed this determination and the Supreme Court reversed the Court of Appeals. The Supreme Court held that § 301 "authorizes federal courts to fashion a body of federal law for the enforcement of these collective bargaining agreements and includes within that federal law specific performance of promises to arbitrate grievances under collective bargaining agreements." 353 U.S. 448, 451, 77 S.Ct. 912, 915.

But this case does not say that § 301 authorizes federal courts to issue injunctions when that remedy is clearly prohibited by the Norris-LaGuardia Act. The Court does hold, after an analysis of legislative history, to reach the conclusion just quoted, that the issuance of an order compelling arbitration was not prohibited by the Norris-LaGuardia Act. The Court reasoned that refusal to arbitrate is not protected conduct under § 4,

29 U.S.C. § 104, and is not the kind of conduct which had given rise to abuse of the power to enjoin. Indeed the Court found that § 8, 29 U.S.C. § 108, indicates a congressional policy favoring the settlement of labor disputes by arbitration. The Court next dealt with § 7, 29 U.S.C. § 107. This section, in addition to § 4, deprives federal courts of jurisdiction to issue injunctions in cases involving labor disputes unless the court makes specific findings of fact and follows prescribed procedural requirements.[2] Citing Judge Magruder in Local 205, United Electrical, Radio and Machine Workers of America (UE) v. General Elec. Co., 1 Cir., 233 F.2d 85, 92, affirmed General Elec. Co. v. Local 205, United Electrical, Radio and Machine Workers of America (U.E.), 353 U.S. 547, 77 S.Ct. 921, 1 L.Ed.2d 1028, the Court found these procedures "inapposite" and concluded that: "The congressional policy in favor of the enforcement of agreements to arbitrate grievance disputes being clear, there is no reason to submit them to the requirements of § 7 of the Norris-LaGuardia Act." 353 U.S. 448, 458, 77 S.Ct. 912, 919.[3]

2. Sec. 7, 29 U.S.C. § 107, provides in part:

"No court of the United States shall have jurisdiction to issue a temporary or permanent injunction in any case involving or growing out of a labor dispute, as defined in this chapter, except after hearing the testimony of witnesses in open court (with opportunity for cross-examination) in support of the allegations of a complaint made under oath, and testimony in opposition thereto, if offered, and except after findings of fact by the court, to the effect—

"(a) That unlawful acts have been threatened and will be committed unless restrained or have been committed and will be continued unless restrained, but no injunction or temporary restraining order shall be issued on account of any threat or unlawful act excepting against the person or persons, association, or organization making the threat or committing the unlawful act or actually authorizing or ratifying the same after actual knowledge thereof;

"(b) That substantial and irreparable injury to complainant's property will follow;

"(c) That as to each item of relief granted greater injury will be inflicted upon complainant by the denial of relief than will be inflicted upon defendants by the granting of relief;

"(d) That complainant has no adequate remedy at law; and

"(e) That the public officers charged with the duty to protect complainant's property are unable or unwilling to furnish adequate protection.

"Such hearing shall be held after due and personal notice thereof has been given, in such manner as the court shall direct, to all known persons against whom relief is sought, and also to the chief of those public officials of the county and city within which the unlawful acts have been threatened or committed charged with the duty to protect complainant's property * * *."

3. Judge Magruder had concluded that:

"Basically, it is the language and background of the Norris-LaGuardia Act itself which point to the conclusion that the restrictions of § 7 do not have to be met as a prerequisite to jurisdiction to grant an order compelling arbitration.

In the case at bar the Union's conduct comes squarely within § 4 of the Norris-LaGuardia Act. This is a lawful and peaceful strike which Congress said a federal court may not enjoin. The Supreme Court in Lincoln Mills was concerned with a refusal to arbitrate—conduct not protected by § 4 and at odds with congressional policy. It did not involve a strike—the issue here. The ultimate question in Lincoln Mills was whether or not Congress by § 301 of the Taft-Hartley Act authorized the federal courts to compel arbitration. The question here is whether or not Congress by that same provision intended to repeal the Norris-LaGuardia Act *pro tanto*. This is not the question which was before the Supreme Court.[4]

█ Prior to the Supreme Court's decision in Lincoln Mills both this Circuit and the First Circuit had agreed that § 301 did not impliedly repeal the Norris-LaGuardia Act. Alcoa S. S. Co. v. McMahon, supra, 2 Cir., 173 F.2d 567, certiorari denied 338 U.S. 821, 70 S.Ct. 65, 94 L.Ed. 498; W. L. Mead, Inc. v. International Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of America, supra, 1 Cir., 217 F.2d 6; Local 205, United Electrical, Radio and Machine Workers of America (UE) v. General Elec. Co., supra, 1 Cir., 233 F.2d 85, affirmed General Elec. Co. v. Local 205, United Electrical, Radio and Machine Workers of America (U.E.), 353

U.S. 547, 77 S.Ct. 921. Two reasons for this conclusion were stressed. First, Congress in enacting § 301 did not expressly withdraw the restrictions of the Norris-LaGuardia Act and such withdrawal cannot be implied, particularly since in other sections of the same Act, viz., §§ 101(h), 208(b), and 302(e), 29 U.S.C. §§ 160(h), 178(b), and 186(e), Congress expressly lifted the bar of the Norris-LaGuardia Act to vest certain injunction powers in the courts when the National Labor Relations Board initiated the court proceedings. Thus, see Alcoa S. S. Co. v. McMahon, supra, D.C. S.D.N.Y., 81 F.Supp. 541, 543, affirmed 2 Cir., 173 F.2d 567, certiorari denied 338 U.S. 821, 70 S.Ct. 65; and see also McCarroll v. Los Angeles County District Council of Carpenters, Cal.1957, 315 P.2d 322. Second, it is an accepted canon of construction that repeals by implication are not favored, especially where the previous statute (the Norris-LaGuardia Act) is not stale or forgotten, but is a "significant and tremendously important piece of legislation which the Congress evidently had specifically in mind when it came to enact the Labor Management Relations Act in 1947." W. L. Mead, Inc. v. International Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of America, supra, 1 Cir., 217 F.2d 6, 9.

█ Bull maintains that these cases are distinguishable because neither in-

Section 7 requires certain preliminary allegations and findings: a threat of unlawful acts leading to substantial injury to property, greater injury to complainant in denying relief than to defendants in granting it, and the inability of the public officials charged with protection of property to furnish adequate protection. Procedural requirements include notice to said public officials and an undertaking for reimbursement by complainant and a surety. These provisions were obviously aimed to limit injunctions to cases involving violent or destructive acts. See also § 9. The enumerated requisites, which draw a logical line in relation to union conduct in strikes and picketing (and perhaps to some employer activities), are not at all compatible with the situation where one party merely demands

that the other be compelled to arbitrate a grievance in accordance with a contract provision for arbitration, in which latter situation the required findings seldom, if ever, could be made either affirmatively or negatively. They just do not sensibly apply. We do not believe Congress intended § 7 in any case to be a snare and a delusion, holding out the possibility of jurisdiction but demanding for its exercise sworn allegations of inapposite facts." 233 F.2d 85, 92.

4. Thus the California Supreme Court, per Judge Traynor, recently concluded in a post-Lincoln Mills decision that § 301 did not repeal the Norris-LaGuardia Act. McCarroll v. Los Angeles County District Council of Carpenters, Cal.1957, 315 P.2d 322.

volved a no-strike clause in a collective bargaining agreement. But this does not follow. The presence of the clause might make it easier to find a breach by a strike, but it can have no effect on the problem of statutory construction. The cases cited above involved strikes which allegedly breached collective bargaining agreements, and the recitals of legislative history therein contained are relevant to our problem here.

Bull contends that these authorities are in error. It maintains that the legislative history of § 301, especially as quoted in Lincoln Mills, requires the conclusion that Congress intended to repeal the Norris-LaGuardia Act to the extent that federal courts do have jurisdiction to enjoin violations of agreements not to strike. In that case, 353 U.S. 448, 452–456, 77 S.Ct. 912, 915–917, Justice Douglas quotes passages from Senate and House Reports indicating that Congress intended to make collective bargaining agreements enforceable on unions as well as employers. Bull finds other congressional statements to the same effect. These statements, however, shed little light on how these agreements are to be enforced; and each is consistent with an interpretation that Congress intended merely to provide employers with a monetary recovery for a union's breach of a no-strike agreement and to impose certain sanctions against employees such as loss of status. Even though the Court found that an agreement to arbitrate is the *quid pro quo* for an agreement not to strike, this does not mean that because the former is specifically enforceable the latter is also. The Court found statements of congressional policy favoring the specific performance of arbitration agreements. Here we have a significant statute opposed to enjoining peaceful strikes.

Bull argues that both Houses agreed initially to allow federal courts to enjoin breaches of collective bargaining agreements. The House did it by including in its version of § 301 the following passage:

"(e) In actions and proceedings involving violations of agreements between an employer and a labor organization or other representative of employees, the provisions of the Act of March 23, 1932, entitled 'An Act to amend the Judicial Code and to define and limit the jurisdiction of courts sitting in equity, and for other purposes,' shall not have any application in respect of either party."

The Senate did it by making violations of collective bargaining agreements unfair labor practices under § 8(b) (5), 29 U.S.C. § 158(b) (5), and empowering the National Labor Relations Board to seek injunctions to restrain unfair labor practices free from the prohibitions of the Norris-LaGuardia Act. Both provisions were eliminated in conference. Bull holds it unrealistic to believe that the conference deleted something on which both Houses previously had agreed. It contends that the difference in method was resolved by leaving the enforcement of collective bargaining agreements to the courts. It points to the following passage in the House Conference Report to support this contention:

"The Senate amendment contained a provision which does not appear in section 8 of existing law. This provision would have made it an unfair labor practice to violate the terms of a collective bargaining agreement or an agreement to submit a labor dispute to arbitration. The conference agreement omits this provision of the Senate amendment. Once parties have made a collective bargaining contract the enforcement of that contract should be left to the usual processes of the law and not to the National Labor Relations Board." H.R.Rep.No. 510, 80th Cong., 1st Sess. 41–42.

Bull asserts that the phrase "usual processes of the law" comprehends the injunctive relief which both Houses had separately approved, and thereby indicates that Congress intended to grant

jurisdiction to enjoin breaches of collective bargaining contracts, including strikes.

We do not find this analysis persuasive. First, the phrase "usual processes of the law" seems to refer to processes in force when the Act was passed. At the time the Taft-Hartley Act was passed federal courts had no power to enjoin peaceful strikes. Second, conference committees may and sometimes do change statutory provisos agreed upon earlier by both Houses. An example is cited in Lincoln Mills, 353 U.S. 448, 452, 77 S.Ct. 912, 915, where the Court points out that both Houses initially provided that failure to abide by an agreement to arbitrate would be an unfair labor practice. This was dropped by the conference. Finally, the House Conference Report does not indicate why the conference dropped the House provision making the Norris-LaGuardia Act inapplicable to suits brought under § 301. The Report makes it clear that the provision was dropped, however, for it states:

> "Section 302(e) of the House bill [the House's original form of § 301] made the Norris-LaGuardia Act inapplicable in actions and proceedings involving violations of agreements between an employer and a labor organization. Only part of this provision is included in the conference agreement." H.R.Rep. No. 510, 80th Cong., 1st Sess. 66.

The Report then goes on to say that the provision remains only in § 301(e), which relates to the determination of the question of agency. If the House provision had stayed in the bill, the trial court undoubtedly would have had jurisdiction to enjoin the strike. But it was deleted without explanation, thus supporting the conclusion that Congress intended the Norris-LaGuardia Act to be applicable to suits brought under § 301.

The mandate of § 4 of the Norris-LaGuardia Act has been an expression of national policy for many years. If this policy is to be changed it should be changed by Congress, and not by judicial legislation or inventiveness. It is our

conclusion that Congress did not repeal § 4 of the Norris-LaGuardia Act by the enactment of § 301 of the Taft-Hartley Act. Under these circumstances the injunction order must be set aside.

Order reversed; action remanded for proceedings by the district court consistent with this opinion.