**UNITED STEELWORKERS OF AMER-ICA, C. I. O., and Walter Burke, Plaintiffs-Appellants,**

v.

**GALLAND–HENNING MANUFACTUR-ING COMPANY, Defendant-Appellee.**

**No. 11774.**

United States Court of Appeals Seventh Circuit.

Feb. 4, 1957.

Abner J. Mikva, Chicago, Ill., Lawrence D. Gillick, Milwaukee, Wis., for appellants.

John H. Wessel, Philip W. Croen, Milwaukee, Wis., for appellee.

Before MAJOR, FINNEGAN and LINDLEY, Circuit Judges.

MAJOR, Circuit Judge.

This is an appeal from an order of the district court entered March 12, 1956, dismissing a complaint for failure to state any claim upon which relief could be granted. The parties in this court

agree, as they did in the court below, that only questions of law are involved, thereby obviating any necessity for a detailed statement of facts.

Plaintiff union is a labor organization, recognized as the sole collective bargaining agent of production and maintenance employees at defendant's plant located in Milwaukee, Wisconsin, and, as such, entered into a collective bargaining agreement with defendant on July 11, 1953, which provided for a grievance procedure to resolve disputes, including a provision for arbitration. In view of the posture of the case as it comes to this court, we see no point in setting forth the various steps provided as a prelude to the right of the parties to call for arbitration. It is sufficient to note that the arbitration provision is in the conventional form found in labor contracts and that the defendant, upon demand of the union refused to submit certain grievances in dispute to arbitration.

Plaintiffs by their complaint sought a decree requiring specific performance by defendant of the arbitration provision. The alleged right to such relief was predicated upon Section 301 of the Labor Management Relations Act, 29 U.S.C.A. § 185(a), and the Federal Arbitration Act, 9 U.S.C.A. §§ 1–14. Defendant moved to dismiss the complaint on the ground that the court was without jurisdiction of the subject matter. The court rendered an opinion and concluded that the Norris-LaGuardia Anti-Injunction Act, 29 U.S.C.A. §§ 101–115, constituted "an insuperable bar to the granting of the relief sought." United Steelworkers of America, C.I.O. and Walter Burke v. Galland-Henning Mfg. Co., D.C., 139 F.Supp. 630, 633. Thereupon, the court entered the order from which this appeal comes.

Notwithstanding that the complaint was dismissed upon the sole ground stated, other propositions of law are relied upon in support of the dismissal, which we conclude should be decided. The contested issues stated by plaintiffs and as agreed to by defendant are:

"1. Does the Norris-LaGuardia Anti-Injunction Act, 29 U.S.C., Sections 110[101]–115, prohibit a federal court from enforcing the arbitration clause set forth in a collective bargaining agreement?

"2. Does Section 301 of the Labor Management Relations Act, 29 U.S.C. Section 185, require a federal district court to specifically enforce the arbitration clause of a collective bargaining agreement?

"3. Does the Federal Arbitration Act, 9 U.S.C. Sections 1–15 [14], either of its own force or in conjunction with Section 301 of the Labor Management Relations Act, require a federal district court to enforce the arbitration clause of a collective bargaining agreement?"

That the issues thus presented involve difficult problems is evidenced by the fact that they have been considered by many courts, with much contrariety of view both as to result and reasoning. There has already been so much written on these issues that we shall state the reasons for our decision without attempting to discuss the many cases called to our attention. Also to be noted is the fact, so we are advised, that the Supreme Court has allowed certiorari in Local 205, United Electrical, Radio and Machine Workers of America (UE) v. General Electric Company, 1 Cir., 1956, 233 F.2d 85; Goodall-Sanford, Inc. v. United Textile Workers of America, AFL, Local 1802, 1 Cir., 1956, 233 F.2d 104; Lincoln Mills of Alabama v. Textile Workers Union of America, CIO, 5 Cir., 1956, 230 F.2d 81; Signal-Stat Corp. v. Local 475, United Electrical, Radio and Machine Workers of America (UE), 2 Cir., 1956, 235 F.2d 298, and Local 19, Warehouse, Processing and Distributive Workers Union, etc. v. Buckeye Cotton Oil Company, 6 Cir., 1956, 236 F.2d 776. In all these cases (and there are others), either some or all of the questions here presented have been decided.

■ The district court relied upon district court cases in support of its conclusion that the Norris-LaGuardia Act was a bar to the allowance of the relief sought. Since its order of dismissal, however, a number of courts have held to the contrary, including courts of appeals in the cases above cited. In fact, the overwhelming weight of authority is to the effect that the Norris-LaGuardia Act does not constitute a bar. We agree and hold accordingly.

Paragraph (a), Sec. 301, of the Labor Management Relations Act, 29 U.S.C. A. § 185(a) provides:

"Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

■ The question is whether Congress by this provision created a substantive right enforceable in a federal court. Some of the courts hold that it is merely jurisdictional or procedural, while others hold that in addition it creates a substantive right. A reading of the plain, unambiguous language, however, forces us to the view that no substantive right was created. The section provides nothing more than that suits for violation of certain specified contracts may be brought in a district court "without respect to the amount in controversy or without regard to the citizenship of the parties." In other words, a forum is created in the absence of diversity jurisdiction the same as though it existed. Paragraphs (b) and (c) of the same section support this view of the intendment of (a).

More important, however, is the decision of the Supreme Court in Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp., 348 U.S. 437, 75 S.Ct. 489, 99 L.Ed. 510. We shall not add to the flood of words which have been employed in appraising, dissecting and distinguishing that opinion, which has become almost as controversial as the provision under discussion. True, there was a sharp division among members of the court, which perhaps is responsible for the contrariety of views as to the holding. However, Mr. Justice Frankfurter, who announced the judgment of the court in an opinion joined in by Mr. Justice Burton and Mr. Justice Minton, relative to Sec. 301 stated, 348 U.S. at page 443, 75 S.Ct. at page 491:

"If the section is given the meaning its language spontaneously yields, it would seem clear that all it does is to give procedural directions to the federal courts. 'When an unincorporated association that happens to be a labor union appears before you as a litigant in a case involving breach of a collective agreement,' Congress in effect told the district judges, 'treat it as though it were a natural or corporate legal person and do so regardless of the amount in controversy and do not require diversity of citizenship.'"

He also stated that when Sec. 301 was considered in the context of the Act as a whole, "the meaning which the section by itself affords is not affected." The legislative history of the provision as related by the court in Westinghouse strongly supports the premise that the sole purpose of Congress was to provide a forum, not to create substantive rights. The Fifth Circuit, in Lincoln Mills of Alabama v. Textile Workers Union of America, CIO, 230 F.2d 81, 87, relied upon the Westinghouse case in support of its holding that Sec. 301 is merely a jurisdictional provision. We agree not only with the result reached by the court in that case but also with its appraisement of the decision of the Supreme Court in Westinghouse.

This brings us to the much disputed question as to whether Congress has

otherwise created a substantive right to enforce an arbitration clause contained in a collective bargaining agreement between a union and an employer whose employees the union represents. Such a right, if it exists, must be found in the Arbitration Act, Title 9 U.S.C. A. § 1 et seq. Only Secs. 1 to 4, inclusive, need be mentioned in connection with the instant inquiry. Sec. 1 enumerates the two subjects encompassed by the Act, that is, " 'Maritime transactions' " and " 'commerce' ", with the definition for each, together with "exceptions to operation of title." We are here concerned only with commerce and the exceptions. "Commerce" is given its traditional definition, that is, "commerce among the several States or with foreign nations * * *." The exceptions are: "* * * but nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." A question arises, therefore, as to whether the collective bargaining agreement entered into between plaintiffs and defendant is a contract of employment "of workers engaged in foreign or interstate commerce." Section 2, so far as here material, provides, "* * * a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, * * * shall be valid, irrevocable, and enforceable * * *." This section presents the question as to whether the bargaining agreement under discussion is a contract evidencing "a transaction involving commerce." Section 3 provides for a stay of proceedings in a suit where the issue therein is referable to arbitration. Section 4 provides: "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement."

The Supreme Court in Bernhardt v. Polygraphic Company of America, Inc., 350 U.S. 198, 200–201, 76 S.Ct. 273, 275, 100 L.Ed. 199, held that these sections "are integral parts of a whole," and that "§§ 1 and 2 define the field in which Congress was legislating." The court also stated, "Section 2 makes 'valid, irrevocable, and enforceable' only two types of contracts: those relating to a maritime transaction and those involving commerce." It appears clear, therefore, that the coverage of the Act, that is, the substantive right, if any, which was created, must be found in Secs. 1 and 2. Thus, plaintiffs' contention, if sound, requires a holding that the collective bargaining agreement was not a "contract of employment" and, therefore, not excepted under Sec. 1, but at the same time that it was "a contract evidencing a transaction involving commerce," under Sec. 2.

On the issue as to whether a collective bargaining agreement constitutes a "contract of employment" within the exception of Sec. 1, the courts again are sharply divided. Those holding in the negative place much reliance, mistakenly we think, upon a statement in J. I. Case Co. v. National Labor Relations Board, 321 U.S. 332, 334, 64 S.Ct. 576, 579, 88 L.Ed. 762, as follows:

"Contract in labor law is a term the implications of which must be determined from the connection in which it appears. Collective bargaining between employer and the representatives of a unit, usually a union, results in an accord as to terms which will govern hiring and work and pay in that unit. The result is not, however, a contract of employment except in rare cases; no one has a job by reason of it and no obligation to any individual ordinarily comes into existence from it alone. The negotiations between union and management result in

what often has been called a trade agreement, rather than in a contract of employment."

The court also stated on the following page:

"After the collective trade agreement is made, the individuals who shall benefit by it are identified by individual hirings. * * * But the terms of the employment already have been traded out. There is little left to individual agreement except the act of hiring."

In our judgment, this statement in Case affords no support for the contention that the collective bargaining agreement under the circumstances of the instant case should not be characterized as a contract of employment. As the court in Case recognized, "Contract in labor law is a term the implications of which must be determined from the connection in which it appears." The circumstances there were far different from those here. There, the court was considering an unfair labor practice charge based upon the employer's refusal to bargain with the union. It sought to justify its refusal on the ground that 75% of its employees were working under individual contracts of employment and that any agreement made with the union would affect the rights of such employees under such individual contracts. The court sustained the Labor Board, which had held against the employer. Obviously, the court was not concerned with a contract of employment, not even a trade agreement of which the court speaks. The sole issue was whether the employer was obligated by law to enter into bargaining negotiations with the union.

In contrast, we are here concerned with an arbitration provision contained in an agreement between the union and the employer which fixes and determines in great detail the rights and obligations of the parties, including the employees. As to the latter, it fixes their rates of pay, hours of work and many other details in connection with their employment, such as time and a half for Satur-day work, double time for certain designated holidays, premium in the hourly rate of pay under specified conditions, rest periods, time off for lunch periods, seniority rights, sick and accident benefits, and vacation rights. Moreover, the rights and obligations of the employer, as well as the union, are spelled out in detail.

We assume that a mere bargaining agreement which the court was discussing in Case would not constitute a contract of employment, particularly in a situation where, as in that case, the employees were under individual contracts. Even so, a collective bargaining agreement entered into by a union for the benefit of employees (present or future) is a prospective contract of employment which becomes absolute at the time of hiring. The hiring merges with and becomes a part of the contract of employment, the terms and conditions of which have been determined in advance. To hold that the bargaining agreement at that time does not constitute a contract of employment is to ignore realities. It would mean that there is no contract of employment between an employer and its employees, working under the terms and conditions set forth in a collective bargaining agreement. Such a contract could only exist in a case of individual hiring where the employer and the employee were free to fix the terms and conditions of employment.

As already pointed out, the coverage of the Act must be determined from Secs. 1 and 2, considered together. In order to escape the exception of Sec. 1, it is argued, as it necessarily must be, that the collective bargaining agreement is not a contract of employment, while at the same time, in order to come within the provisions of Sec. 2 it is argued, as it necessarily must be, that the collective bargaining agreement is a "contract evidencing a transaction involving commerce." Those two contentions are irreconcilable and, in our judgment, cannot stand side by side. More than that, even though we assume the sound-

ness of plaintiffs' contention as to the exception contained in Sec. 1, we think Sec. 2 is without application. In the absence of a contract of employment, we are not able to discern how there could be a "contract evidencing a transaction involving commerce." A collective bargaining agreement, whether it be characterized as a contract of employment or otherwise, does not evidence a transaction. It evidences an agreement which determines the terms and conditions of employment and which in itself does not involve commerce. It is only when the agreement becomes merged with the hiring of employees that commerce is involved.

For the reasons stated, the judgment must be affirmed. It is so ordered.

FINNEGAN, Circuit Judge.

I concur in the result.