**INTERNATIONAL TYPOGRAPHICAL UNION LOCAL NO. 21, Petitioner,**

v.

**SAN FRANCISCO NEWSPAPER PRINTING COMPANY, a corporation, Chronicle Publishing Company, a corporation, and the Hearst Corporation, a corporation, Respondents.**

Civ. No. 44227.

United States District Court
N. D. California, S. D.

Nov. 24, 1965.

Neyhart & Grodin, by Duane B. Beeson, San Francisco, Cal., for petitioner.

George O. Bahrs, San Francisco, Cal., for respondents.

Cooper, White & Cooper, by Sheldon G. Cooper, San Francisco, Cal., for Chronicle Pub. Co. and San Francisco Newspaper Printing Co.

McEnerney & Jacobs, by Garret McEnerney, II, San Francisco, Cal., for Hearst Corp. and San Francisco Newspaper Printing Co.

HARRIS, Chief Judge.

The International Typographical Union Local No. 21 filed a petition to compel arbitration concerning certain

disputes which have arisen under a collective bargaining agreement, in the Superior Court of the State of California, in and for the City and County of San Francisco. The cause was removed to this court by respondents. Jurisdiction is conferred by Section 301 of the Labor Management Relations Act. (29 U.S.C.A. § 185)

The salient facts are not in dispute and there is no genuine issue. Respondents have filed motions for summary judgment and petitioner has filed a cross-motion.

The facts essential to a determination of the issue are substantially as follows:

Respondent Chronicle Publishing Company and The Hearst Corporation are parties to a collective bargaining agreement negotiated on their behalf by San Francisco Newspaper Association.

The term of the contract is March 8, 1964, to March 5, 1966, and contains provisions governing the wages, hours and conditions of employment of all composing room employees who work for the three newspapers. On September 13, 1965, a change was made in the manner of handling the mechanical work for the said newspapers, as a result of the elimination of the morning edition of the Examiner, the merger of the paper with the News Call-Bulletin and the publication of a single Sunday newspaper, the Examiner-Chronicle.

A new corporation was organized, the San Francisco Newspaper Printing Company, which undertook the performance of the mechanical work, including composing room work for the surviving papers.

The printing company, jointly owned by the remaining respondents, has adopted the existing collective bargaining agreement.

The merger and innovation created substantial problems. Petitioner had a series of meetings with respondents in an effort to agree upon an acceptable basis for handling the readjustment of work procedure. The basic contention of petitioner was that, notwithstanding the merger, the various provisions of the collective bargaining agreement which contemplated separate and independent handling of certain matters remained effective as to each surviving newspaper separately. As illustrative:

Petitioner's position in the dispute with respondents "is that the contract contemplates and requires a single work force for each separately and independently published newspaper. Further, that the contract requires that advertisement matter set for one newspaper be reset if published in the other; that the composition work, with the exception noted in Section 38,[1] be performed separately for each newspaper; that hiring and seniority be handled on a newspaper by newspaper basis; and that none of the conditions which applied separately for each newspaper before September 13th can be changed in view of Section 9(a)[2] until the claims of violation are finally determined."

---

1. Section 38. No composition, machine or hand, for outside parties, shall be done in the composing room of any newspaper party to this Agreement; provided, that this shall not prevent any newspaper party to this Agreement from setting matter designed for its own use, or for a weekly or monthly magazine owned by said newspaper and printed in the same building; or from setting matter designed to be used by any advertiser in said newspaper who may desire to have an advertisement set up and printed for circularization.

2. Section 9(a). It is agreed between the parties that controversies must be avoided. To this end both parties will, in every instance, give prompt attention to disputes and will in good faith endeavor to settle all differences by amicable discussions.

Any controversy (except as provided otherwise herein) arising under this contract between a signatory Publisher and the Union shall be submitted to the President of the Union or his representative(s) and the Publishers, or his representative(s), for conciliation. *Pending final settlement, except as hereinafter provided, conditions prevailing prior to the dispute shall be maintained.* (Italics ours.)

Simply stated, the central and significant question with respect to the foregoing disputes is whether the contract requires separate work forces with respect to the two newspapers which are separately published.

Petitioner asserts that the printing company which acknowledges its obligation to comply with the contract, cannot be in a better position than the assignors. Further, that the dispute be submitted under the grievance and arbitration provisions of the bargaining contract, to which the Chronicle and Examiner were original parties. Section 9(a) of the contract was invoked.

Respondents refused to submit the underlying disputes to arbitration and notified petitioner that they would not maintain the *status quo* until the disputes could be resolved. Further, that they would not submit to arbitration the question whether the contract required them to maintain "conditions prevailing prior to the dispute."

I

*The Several Motions Asserted by Chronicle Publishing and The Hearst Corporation*

The several motions of the newspaper respondents for summary judgment are based upon the following grounds:

That as of September 13, 1965, The Hearst Corporation discontinued the composing and printing of newspapers and ceased to employ any persons engaged in the composing and printing of newspapers and in particular ceased to employ any persons who are members of or represented by petitioner, International Typographical Union, Local No. 21;

That since September 13, 1965, San Francisco Newspaper Printing Company, was and is the only employer employing any persons engaged in the composing and printing of the San Francisco Examiner-News Call-Bulletin and/or the San Francisco Chronicle, and was and is the only employer employing persons who are members of or represented by petitioner, International Typographical Union, Local 21, or engaged in the composing and printing of said San Francisco Examiner-News Call-Bulletin and/or said San Francisco Chronicle and/or the San Francisco Sunday Examiner-Chronicle;

Therefore the only employer or entity against which an arbitration award can be directed requiring the employment of two work forces is the San Francisco Newspaper Printing Company.

The position of respondent San Francisco Newspaper Printing Company in support of its motion for summary judgment reflects the following:

San Francisco Newspaper Printing Company is a newly organized and created corporation which became an employer on or about September 13, 1965;

That on or about September 13, 1965, San Francisco Newspaper Printing Company became a party to the collective bargaining agreement, Exhibit A, attached to the petition;

Said contract permits the merger of newspaper composing rooms but contains no requirements that there be more than one work force in a single printing establishment;

Petitioner is seeking to have said requirement, namely, that there shall be two work forces in the composing room of San Francisco Newspaper Printing Company written into the collective bargaining agreement through the process of arbitration, contrary to the provisions of Section 2(a) of said agreement;

This is not a subject on which arbitration can be directed or compelled;

The provision in Section 9(a) of Exhibit A, attached to the petition, requiring that "pending final settlement, conditions prevailing prior to

the dispute shall be maintained" refers only to disputes that will be finally settled by the procedures set forth in Section 9(a), namely, by arbitration.

## II

### *The Applicable Authorities Foreclose the Court in Granting the Petition for Arbitration*

The primary thrust of petitioner's argument centers around the contention that although the innovation effected by the merger contemplated a *unification* of the newspaper composing rooms, nevertheless, there shall be maintained *two work forces* in the composing room of the San Francisco Newspaper Printing Company.

It must be observed that the agreement under consideration, although permitting the merger of newspaper composing rooms, contains no requirement that there *be more than one work force in a single printing establishment.*

May the agreement at bar be materially altered and amended, and new rights acquired through the process of arbitration?

The answer is simplified, to some extent, as a result of several well-reasoned and persuasive decisions.

In John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 555, 84 S.Ct. 909, 917, 11 L.Ed.2d 898, the court said, in part:

"Of course, the Union may not use arbitration to acquire new rights against Wiley any more than it could have used arbitration to negotiate a new contract with Interscience, had the existing contract expired and renewal negotiations broken down."

In Boston Printing Pressmen's Union v. Potter Press, 141 F.Supp. 553, Judge Wyzanski, in a decision which has met with significant judicial approval, said (554):

"Stated summarily, plaintiff's complaint seeks a mandatory injunction enforcing the parties' written agreement to submit to arbitration a new

contract to govern employment conditions at defendant's plant following the expiration on September 1, 1954, of their collective bargain. In short, the Court is asked to direct what may conveniently be described as a *prospective* or *quasi-legislative* arbitration establishing future labor conditions not *specifically* envisaged in their earlier contract. This is, at least with respect to industrial labor problems, a novel problem not hitherto adjudicated by a federal court acting under the asserted authority of § 301 of the Taft-Hartley Labor Management Relations Act of 1947, 61 Stat. 156, 29 U.S.C.A. § 185."

After a discussion of the distinction between quasi-judicial as distinguished from quasi-legislative disputes, the court concluded (557–558):

"So many doubts are stirred that a court would do well to move warily. Recalling with what a jaundiced eye § 301 of the Labor Management Act has been viewed by some justices of the Supreme Court in Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp., 348 U.S. 437, 75 S.Ct. 489, 99 L.Ed. 510, and with what difficulty the courts in this circuit were led to the doctrine of Textile Workers Union of America (CIO) v. American Thread Co., D.C.Mass., 113 F.Supp. 137, this Court deems it undesirable to jump into what may be a bottomless pit of dispute over future working conditions. Perhaps on reflection, no one would be happy to have judges again exercising quasi-legislative magistracy over labor problems of uncertain dimension.

In any event, if the Courts are to go into the field of quasi-legislative labor awards let the representatives of the workers, the representatives of the employers, and above all the representatives of the people make themselves first heard in the halls of Congress. It would be unsound

for a judge to rely upon the haphazard chances of litigation where counsel represent discrete parties not general partisan interests, and where the judge, not being informed of the legislative will, may tend arbitrarily to overaccentuate his particular parochial experience.

Hence assuming the constitutionality of a statute which would authorize Federal Courts to enforce legislative awards of arbitrators, I nonetheless conclude that the present United States arbitration statute does not seek to reach that constitutional limit, but is concerned only with the enforcement of quasi-judicial awards directed at the ascertainment of facts in a past controversy and at the prescription of recoverable damages or other suitable awards for that which has been broken not for that which is to be built.

Defendant's motion to dismiss granted."

The case was reviewed by the Court of Appeals for the First Circuit, Boston Printing Pressmen's Union No. 67 v. Potter Press, 241 F.2d 787, 789, Chief Judge Magruder speaking for the Court.

" * * * that is, 'the Court is asked to direct what may conveniently be described as a *prospective* or *quasi-legislative* arbitration establishing future labor conditions not *specifically* envisaged in their earlier contract.' 141 F.Supp. at page 554. We agree with the district court that, assuming the constitutionality of a statute under which the Congress, with its eyes open, might authorize the federal courts to enforce legislative awards of arbitrators, nevertheless, 'the present United States arbitration statute does not seek to reach the constitutional limit, but is concerned only with the enforcement of quasi-judicial awards directed at the ascertainment of facts in a past controversy and at the prescription of recover-

able damages or other suitable awards for that which has been broken not for that which is to be built.' Id., 141 F.Supp. at pages 557–558. For further detail we are content to refer to the opinion by Judge Wyzanski in the district court, 1956, 141 F.Supp. 553.

A judgment will be entered affirming the judgment of the District Court."

In Austin Mailers Union No. 136 v. Newspapers, Inc. (CCA5, 1964) 329 F.2d 312, cert. denied 377 U.S. 985, 84 S.Ct. 1894, 12 L.Ed.2d 753, the Court of Appeals for the Fifth Circuit, Circuit Judge Hutcheson in affirming the Potter Press case, supra, said:

"Appellant's points of error correctly reflect the two principal issues here involved: (1) whether Sec. 301 of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 185(a) empowers the federal courts to compel arbitration pursuant to a contract between an employer and a labor organization, as to future contractual provisions; and (2) whether the contract here involved was still in effect when the appellant sought to enforce the arbitration provisions.

In his findings of fact and conclusions of law, the district judge answered these two issues in the negative. Based thereon, he then entered his order and judgment granting appellee summary judgment.

We are of the opinion that the findings of fact are not shown to be clearly erroneous and that on the basis of these facts and the controlling decisions, his conclusions of law were correctly drawn. In support of his opinion, the district judge relied on Boston Printing Pressmen's Union v. Potter Press, 141 F.Supp. 553, affirmed 241 F.2d 787, cert. denied 355 U.S. 817, 78 S.Ct. 21, 2 L.Ed.2d 34.

Here appellant vigorously attacks the Potter Press decision as incor-

rect and the decision appealed from here as wrong. We cannot agree with this view. On the contrary, we are of the opinion that the Potter Press case was correctly decided and that on the findings and conclusions of the district judge, which we approve, the judgment here appealed from must be affirmed." (pp. 312–313)

■ This court recognizes that federal law favors the submission of controversies respecting collective bargaining agreements to arbitration. (United Steel Workers of America, AFL–CIO v. Warrior & Gulf Nav. Co., 363 U.S. 574. Also, that the merger, without more, did not remove claims otherwise plainly arbitrable from the scope of the arbitration clause. (John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 554, 84 S.Ct. 909, 11 L.Ed.2d 898) However, in the case at bar, the underlying claim or controversy in question does not come within the purview of the arbitration clause, Section 9(a).

■ Petitioner's claim that there shall be *two work forces in the composing room* of the San Francisco Newspaper Printing Company manifestly does not require interpretation and determination by grievance and arbitration proceedings. Under such circumstances, the application of Section 9(a), supra, would permit, under the guise of arbitration, a material revision and rewriting of the contract, in a quasi-legislative proceeding, not specifically contemplated or envisaged in the collective bargaining agreement under consideration.

Accordingly, IT IS ORDERED, ADJUDGED AND DECREED that the petition to compel arbitration filed herein be dismissed and that respondents are not compelled to submit to arbitration the present controversy between the parties under the terms of the collective bargaining agreement now in effect; and

It is further ordered that respondents' motions for summary judgments are, and each of them is, granted.